UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| J.F., a minor child,<br><br>              Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>              Defendant. | Case No.  C04-5891RJB<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for November 25, 2005 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed by the parties.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jason Freeland is currently 19 years old, however this case is focused on plaintiff's alleged disability when he was several years younger.  Plaintiff did not like school and thus, his attendance was a chronic problem.  Plaintiff's mother testified that her son was enrolled in special education classes since junior high school.  Plaintiff testified that he could read books that were like cartoons, (Tr. 523); he was able to add and subtract, but could not multiply and divide.  He stated that his special education teacher assisted him and three to four other children in performing their work, but reading the questions to them and if they do not know the answers, gives them the answers, writes the answers and they copy the answer from the teacher. (Tr. 525)  He stated that he had friends at school, had one friend in his neighborhood, but it had been one year since he visited with him. (Tr. 526-527) He stated for the past year that he did not want to go out of his house and he stays home reads Anime books and plays video games. (Tr. 527)

On August 26, 1997, when plaintiff was 11 years old, an application was filed on plaintiff's behalf seeking Child's SSI disability; plaintiff was found disabled as of August 1, 1997, based on mental

1   retardation and attention and concentration deficits (Tr. 31).  Subsequently, plaintiff underwent a

2   continuing disability review and on March 1, 2001, plaintiff was found to have experienced medical

3   improvement and his disability ceased March 2001 (Tr. 31). Plaintiff filed a request for reconsideration,

4   which was granted (Tr. 63-65) and he requested a hearing (Tr. 66-67). On September 12, 2002, an

5   administrative law judge (ALJ) conducted the first hearing and heard testimony from three witnesses: Ms.

6   Freeland, plaintiff's mother; Anna Freeland, plaintiff's sister; and plaintiff, who was represented by counsel

7   (Tr. 536-59). On January 7, 2003, a second hearing was held, in which the ALJ heard testimony from two

8   witnesses: plaintiff, who was represented by counsel; and the medical expert, Larry Hart, Ph.D., a

9   psychologist (Tr. 536-59).

10          On August 11, 2003, the ALJ found plaintiff was a 16 year old boy with asthma and a learning

11  disorder, which no longer medically or functionally met or equaled the severity of any impairments listed in

12  the Listing of Impairments.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 19-29). The Appeals Council

13  denied plaintiff's request for review (Tr. 6-8), making the ALJ's decision the final decision of the

14  Commissioner. *See* 20 C.F.R. §§ 416.981, 422.210 (2005).

15          Plaintiff now brings this action pursuant to Section 205(g) of the Social Security Act, as amended,

16  42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision terminating his SSI

17  benefits. Plaintiff alleges the following errors were made by the ALJ:

18          (i) the ALJ failed to accurately apply the childhood mental disorder listings and the functional

19  equivalent regulations;

20          (ii) the ALJ erred when he discounted the opinion of the state agency consultants without providing

21  specific and legitimate reasons;

22          (iii) the ALJ improperly ignored test results obtained in Dr. Chalstrom's report; and

23          (iv) the ALJ erred in rejecting and discounting the testimony of lay witnesses and teachers.

24  After careful consideration of the Administrative Record and the parties' memoranda, the undersigned find

25  the administration erred when it failed to specifically consider whether or not plaintiff's condition met or

26  equaled Section 112.02 of the Listings.  This court  recommends that the Court REMAND the matter to

27  the administration for further review.

28                                              **<u>DISCUSSION</u>**

REPORT AND RECOMMENDATION
Page - 2

1    The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the

2    decision is supported by substantial evidence in the record.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th

3    Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant

4    evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales,

5    402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla

6    but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

7    Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

8    interpretation, this Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579

9    (9th Cir. 1984).

10    After reviewing the matter, the court finds the administration erred when the ALJ limited his review

11   to only Section 112.05 of the Listings.   Plaintiff specifically argues the ALJ failed to consider Jason's

12   claim under Section 112.02 – Organic Mental Disorders.  The regulations define an Organic Mental

13   Disorder, as follows:

14       Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of
         the brain. The history and physical examination or laboratory tests, including psychological
15       or neuropsychological tests, demonstrate or support the presence of an organic factor
         judged to be etiologically related to the abnormal mental state and associated deficit or loss
16       of specific cognitive abilities, or affective changes, or loss of previously acquired functional
         abilities.
17
18   The required level of severity for this Listing is met when the requirements in both A and B are satisfied.

19   A. Medically documented persistence of at least one of the following:

20       1. Developmental arrest, delay or regression; or
         2. Disorientation to time and place; or
21       3. Memory impairment, either short-term (inability to learn new information), intermediate,
         or long-term (inability to remember information that was known sometime in the past); or
22       4. Perceptual or thinking disturbance (e.g., hallucinations, delusions, illusions, or paranoid
         thinking); or
23       5. Disturbance in personality (e.g., apathy, hostility); or
         6. Disturbance in mood (e.g., mania, depression); or
24       7. Emotional lability (e.g., sudden crying); or
         8. Impairment of impulse control (e.g., disinhibited social behavior, explosive temper
25       outbursts); or
         9. Impairment of cognitive function, as measured by clinically timely standardized
26       psychological testing; or
         10. Disturbance of concentration, attention, or judgment;

27   AND

28       B. Select the appropriate age group to evaluate the severity of the impairment:  . . . . .

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
a. Marked impairment in age-appropriate cognitive/ communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests . . .; or
b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child . . . and including, if necessary, appropriate standardized tests; or
d. Marked difficulties in maintaining concentration, persistence, or pace.

Defendant's response acknowledges that the ALJ did not specifically discuss plaintiff's condition in the context of Section 112.02, but argues the claim is "completely speculative and not supported by the medical record."  The court disagrees.  The record contains evidence supporting plaintiff's claim.

Dr. Hart, a psychologist who testified as the medical expert at the second administrative hearing, opined that repeat psychological testing made it difficult to accurately assess plaintiff's IQ. He stated that generally since plaintiff had been tested repeatedly that the last testing of his IQ in 2002, by Dr. Neims was probably the best test (Tr. 542).  Because he found the discrepancy in the test results confusing, he averaged the 97, 2001 and 2002 psychological testing scores and concluded that plaintiff's mean verbal IQ was 76, his mean performance IQ was 78 and his mean full scale IQ was 75 (Tr. 547). Dr. Hart opined that the completeness of the background information, the ability of the parent to articulate and communicate about the child, the behavioral observations and the history were all critical to the diagnosis and formulation of a diagnosis and report (Tr. 552).  Dr. Hart indicated at the conclusion of the hearing that plaintiff should be on medication because he was obviously organically compromised and would function better on medication (Tr. 557).

Standardized test scores from the Woodcock Johnson Test and Wechsler Individual Achievement Test document that plaintiff is functioning more than two standard deviations below the mean. When he was in 9th grade, comments written on his Individualized Education Plan state, "according to the Woodcock Johnson Test, he has a 4th grade reading level, and a 3rd to 4th grade math level. In 10th grade, the Woodcock Johnson Test indicated a 4.3 grade reading level, 4th grade math level, a 2nd grade written language level, a 2nd grade reading comprehension level, 1st to 2nd grade basic writing skills level

1    and a 3rd to 4th grade written expression level. His overall total achievement level was at a 3.6 grade

2    equivalency level (Tr. 391). Dr. Chalstrom, a consultative examiner retained by the Social Security

3    Administration, conducted the Wechsler Individual Achievement Test. His test scores demonstrated that

4    plaintiff's cognitive abilities were at a 3rd grade reading level, 3rd grade math level and a 2nd grade

5    spelling level (Tr. 345).  Additionally, notes in his Individualized Education Plan document his difficulties

6    in concentration persistence and pace. In September 1999 when he was in 8th grade, comments written on

7    his Individualized Education Program (IEP), stated, "textbooks, materials, assignments written at 2.0 grade

8    level, receives 1:1 and small group instruction, longer time on tests and assignments and oral responses to

9    tests as needed" (Tr. 156).  According to his 2001, evaluation by the Bremerton School District, "he still

10   requires a great deal of supervision and assistance in order to be successful", (Tr. 391), in 8th grade it was

11   stated, "testing with accommodations maximum length of time, frequent breaks, directions being read to

12   him". (Tr. 159)  If we combine additional supervision required at school with the statements from Mark

13   Dickerman, the witness who testified at his continuing disability hearing "needs step by step help, needs

14   one-on-one attention" and his sister's testimony that he gets distracted when performing household chores,

15   there is credible evidence that he has an extreme limitation regarding concentration, persistence and pace.

16                                              **CONCLUSION**

17          Based on the foregoing, the matter should be remanded for further review.  On remand the matter

18   should be assigned to a different ALJ.   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal

19   Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written

20   objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for

21   purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by

22   Rule 72(b), the clerk is directed to set the matter for consideration on **November 25, 2005**, as noted in the

23   caption.

24          DATED this 3rd day of November, 2005.

25

26                                                    */s/ J. Kelley Arnold*
                                                     J. Kelley Arnold
                                                     U.S. Magistrate Judge

27

28